**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

JUSTIN GREER,

      Plaintiff,

v.                                                          Case No. 2:19-cv-02525-MSN-tmp

CUMMINS, INC.,

      Defendant.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Before the Court is Defendant Cummins, Inc.'s ("Cummins") Motion for Summary Judgment, filed May 21, 2021.  (ECF No. 47) ("Motion.")  Defendant accompanied its Motion with a Statement of Undisputed Material Facts, (ECF No. 48); Declaration of Laquesha Thompson, Defendant's Human Resources Director, (ECF No. 48-1); Declaration of Jeffrey Beck, Defense Counsel, with Plaintiff's deposition transcript, (ECF No. 48-2), and a Memorandum of Law, (ECF No. 49).  After the Court granted two extensions of time, (*See* ECF Nos. 51, 53), Plaintiff Justin Greer, through counsel, (*see* ECF Nos. 24, 25), filed his Responses to the Motion and Statement of Undisputed Material Facts on July 9, 2021.  (ECF Nos. 56, 57.)  Defendant filed its Reply on August 6, 2021.  (ECF No. 125 at PageID 767.)  For reasons below, the Motion is **GRANTED**.

## BACKGROUND

Plaintiff, an African American male, sued Defendant, his employer at the time, for race discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 ("Title VII") and Section 1981 of the Civil Rights Act of 1866, 28 U.S.C. § 1981 ("Section

1981").[1]  (ECF No. 31 at PageID 198.)  Defendant employed Plaintiff as a Customer Quality Assurance Specialist at its Memphis Diesel Recon Manufacturing Plant ("RMP") in 2013.  (*Id.* at PageID 199.)  "Plaintiff's education, background, and experience with Cummins were all in assembly, customer relations, and operations management," (ECF No. 57 at PageID 705), and Plaintiff reported directly to the supervisor of the Quality Control Department.  (*Id.* at PageID 706.)  The Quality Control Department employs a team of technical engineers and non-technical staff, such as Quality Assurance Specialists.  (*Id.*)

As a Customer Quality Assurance Specialist, Plaintiff does not dispute that his "primary responsibility was to interface with all of the customers . . . and ensure that [Cummins] received a high satisfaction customer service score based off any complaints. . . ."  (*Id.* at PageID 707.) Nonetheless, some Cummins personnel "referred to him as a Customer Quality *Engineer* in emails, local and corporate presentations, and conversations."[2]  (ECF No. 31 at PageID 199) (emphasis added).  "During his employment, Mr. Greer made several complaints to management and human resources alleging" race discrimination cost him promotional and professional opportunities as well as his deserved title and salary classifications at Cummins.  (*Id.* at PageID 200; ECF No. 56 at PageID 695; ECF No. 57 at PageID 707.)

To address Plaintiff's concerns, Defendant's Human Resources Division, applying company policy, directed Plaintiff's supervisor, Sidney Joseph, also African American, to "work[] with Plaintiff to complete" a Job Content Questionnaire ("JCQ") that sketched Plaintiff's "roles and responsibilities, including a breakdown of how much time he spent on each duty."  (ECF No.

---

[1] The Court has federal question jurisdiction under 28 U.S.C. § 1331 *et seq*.

[2] Plaintiff does not dispute that it is common for Cummins employees to simultaneously hold different titles: the local title, specific to a plant and varies based on what the local job responsibilities may be, and the Global Position Profiles ("GPP").  (ECF No. 57 at PageID 707.)

57 at PageID 708.)  After Defendant's Human Resources Leader, Brian Small ("Small"), reviewed the JCQ in accordance with an Internal Position Evaluator ("IPE"), Defendant made four offers to address Plaintiff's concerns.[3]  *First*, Defendant offered Plaintiff a position as a Quality Functional Excellence Specialist that Plaintiff voluntarily rejected in February 2017.  (*Id.* at Page ID 709.) Unrelated to this offer and rejection, Defendant "determined that Plaintiff's role had evolved over time and could be reclassified . . . ."  (*Id.*)  *Second*, in May 2017, and because of a job reclassification, Defendant "offered Plaintiff a seven percent pay increase" that Plaintiff rejected because he believed he would actually earn less "due to the loss of overtime pay he collected as an hourly employee . . . ." (*Id.* at PageID 710.) *Third*, and "to find a way" to address this concern, Small offered to "keep Plaintiff hourly . . . which would address Plaintiff's concerns about his eligibility for overtime," but "explained that Cummins would need to reduce his responsibilities" if he accepted it.  (*Id.* at 711.)  Plaintiff once again rejected Small's solution.  (*Id.*)  *Fourth*, "at Plaintiff's request, Small recalculated Plaintiff's new salary considering his actual earnings, including overtime" and presented another offer, which Plaintiff accepted, and Defendant reclassified Plaintiff under a Customer Quality Assurance Specialist local title and Customer Quality Engineer GPP.  (*Id.*)  Plaintiff then trained the new Interim Quality Leader, the very position to which he was allegedly denied promotion.  (*Id.* at PageID 713.)

Once this litigation began, Plaintiff avers that he "had no personal knowledge or evidence to suggest any of his supervisors had any racial animus towards him."[4]  (*Id.* at PageID 714.)  At

---

[3] IPE is a company-wide tool "standard across Cummins" and utilized by Defendant to verify the appropriate pay grade for its employees.  According to Brian Small at his deposition, IPE uses a predetermined "calculator template", but "there are unique IPEs for every single GPP or global position profile."  (ECF No. 55 at PageID 635.)

[4] Plaintiff disputes Defendant's accusation that he speculatively concluded his termination was racially motivated.  (*See* ECF No. 57 at PageID 714.)  To decide a motion for summary judgment, the Court construes *all* facts in favor of the non-moving party.  *See Matsushita Elec.*

the end of 2019, Defendant decided to undertake a reduction in force at the RMP facility where Plaintiff worked.   (*Id.* at PageID 714.)   Consequently, RMP Manager Alvin Richardson ("Richardson"), an African American employee, "evaluated . . . each employee's performance rating, criticality of skill set or experience to business, skill or technical knowledge level, teamwork, right environment scores and the needs of the employee's department" to determine whether the circumstances warranted a termination in accordance with the reduction in force.  (*Id.* at PageID 715.)  Richardson, applying these criteria, decided to terminate Plaintiff, along with five others in his chain of command, on January 8, 2020, based on Plaintiff's "communication issues, attendance issues, and performance issues," but such issues were not documented in Plaintiff's personnel file.  (*Id.* at PageID 716, 718–19.)  The racial demographics for terminated employees include two Caucasians, three African Americans, and one Hispanic indivdiual.  (*Id.* at PageID 715–16.)   In April 2020, Plaintiff obtained new employment with General Electric in a "comparable" role to the one he previously occupied at Cummins' RMP facility.  (*Id.*)  On August 8, 2020, Plaintiff filed his *pro se* Complaint, later amended, wherein he seeks compensatory and punitive damages.  (ECF No. 31 at PageID 203.)

## **STANDARD OF REVIEW**

Federal Rule of Civil Procedure 56 permits a party to move for summary judgment — and the Court to grant summary judgment — "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

---

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Therefore, the undisputed fact that Plaintiff lacks personal knowledge of racial animus by his supervisors at Cummins, while certainly relevant, is not dispositive as to whether his *termination* was racially motivated.

56(a).  A party asserting the presence or absence of a genuine dispute of material fact must support its position either by "citing to particular parts of materials in the record," including depositions, documents, affidavits or declarations, stipulations, or other materials, or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).  To decide a motion for summary judgment, courts must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).  However, to survive summary judgment, a plaintiff "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586.  Courts may not weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden to show that no genuine dispute of material fact exists. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The moving party may discharge this burden either by producing evidence that demonstrates the absence of a genuine issue of material fact or simply "by 'showing'—that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Where the movant has satisfied this burden, the nonmoving party cannot "rest upon its . . . pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009) (citing *Matsushita*, 475 U.S. at 586); Fed. R. Civ. P. 56.  The nonmoving party must present sufficient probative evidence to support its claim that disputed material facts remain that must be evaluated by a judge or jury at trial. *Anderson*, 477 U.S. at 248–49 (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253 (1968)); *see also White v.*

*Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 475–76 (6th Cir. 2010).  A mere scintilla of evidence does not suffice; there must be evidence from which a jury could reasonably find in favor of the nonmoving party.  *Anderson*, 477 U.S. at 252; *Moldowan*, 578 F.3d at 374.

A court's limited role is to determine whether there is a genuine dispute about a material fact; that is, if the evidence in the case "is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.  This determination requires that the Court "view the evidence presented through the prism of the substantive evidentiary burden."  *Id.* at 254.  "The court need consider only the cited materials, but it may consider other materials in the record."  Fed. R. Civ. P. 56(c)(3).  Thus, if the plaintiff must ultimately prove its case at trial by a preponderance of the evidence, on a motion for summary judgment the Court must determine, based on the record, whether a jury could reasonably find the plaintiff's factual contentions true by a preponderance of the evidence.  *See Anderson*, 477 U.S. at 252–53.

Finally, should the nonmoving party fail to make a sufficient showing on an essential element of its case that it has the burden to prove, the movant will be entitled to summary judgment.  *Celotex*, 477 U.S. at 323.  The Court construes Rule 56 with due regard not only for the rights of those "asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis."  *Id.* at 327.

## DISCUSSION

The Court must decide whether Plaintiff survives summary judgment on either of his two claims: race discrimination and retaliation.  (*See* ECF No. 31.)  For clarity purposes, the Court addresses each claim separately and in accordance with its order of presentation in the pleadings.

**A. Race Discrimination Claims**

Plaintiff alleges in his Amended Complaint that Defendant violated 42 U.S.C. § 2000e–2(a) because it intentionally or with reckless indifference: (a) terminated him based on his race and (b) "subject[ed] him to different terms and conditions of employment than similarly situated white employees." (ECF No. 31 at PageID 201–02.)  He asserts his termination caused him to suffer "emotional distress, humiliation, lost wages and benefits, [and] future lost wages . . . ." (*Id.*) Defendant responds in its Motion that Plaintiff's race discrimination claim fails as a matter of law for three reasons: (1) the claim is partially time-barred; (2) insufficiently pled; and (3) valid nondiscriminatory reasons warranted Plaintiff's termination.  (ECF No. 49 at PageID 480–88.) The Parties' positions will be developed further in this section's analytical paragraphs.

While a plaintiff may prove a race discrimination claim under Title VII and Section 1981 with either direct or circumstantial evidence, the same analysis governs both statutory provisions.[5] *See Evans v. Walgreens Co.*, 813 F. Supp. 2d 897, 917 (W.D. Tenn. 2011) (citing *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 514 (6th Cir. 2009)).  "Direct evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions."  *Ondricko v. MGM Grand Detroit, LLC*, 689 F.3d 642, 649 (6th Cir. 2012).  "Circumstantial evidence, on the other hand, is proof that does not on its face establish [unlawful] animus, but does allow a factfinder to draw a reasonable inference that [unlawful activity] occurred."  *Id.*  "Where the plaintiff does not base his claim on direct evidence, his

---

[5] Here, Plaintiff has brought claims under both Title VII and Section 1981.  The Court reviews Section 1981 claims under the same analytical framework appropriate for Title VII claims. *Tennial v. United Parcel Service, Inc.*, 840 F.3d 292, 302 (6th Cir. 2016); *Wade v. Knoxville Utilities Bd.*, 259 F.3d 452, 464 (6th Cir. 2001); *Johnson v. University of Cincinnati*, 215 F.3d 561, 573 n.5 (6th Cir. 2000) ("The elements of prima facie case as well as the allocations of the burden of proof are the same for employment claims stemming from Title VII and § 1981.").

circumstantial evidence is analyzed under the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), burden-shifting framework." *Alsoofi v. Mnuchin*, No. 19-1960, 2020 U.S. App. LEXIS 39805, at *7 (6th Cir. 2020) (citing *Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339, 346 (6th Cir. 2012)). This framework provides that if (1) a plaintiff can make a "prima facie case" of race discrimination, then (2) "the burden shifts to the employer to proffer a legitimate, nondiscriminatory reason for its decision." *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 584 (6th Cir. 2009). "If the employer carries its burden," then (3) "the plaintiff must then prove by a preponderance of the evidence that the reasons offered by the employer were pretextual." *Id.* The plaintiff has the burden throughout this analysis to "persuad[e] the trier of fact that the defendant intentionally discriminated against the plaintiff. . . ." *DiCarlo v. Potter*, 358 F.3d 408, 414–15 (6th Cir. 2004). "To survive summary judgment, a plaintiff need only produce enough evidence to support a prima facie case and to rebut, but not to disprove, the defendant's proffered rationale. *Bolden v. Lowes Home Ctrs., LLC* 783 F. App'x 589, 594 (6th Cir. 2019) (citing *Griffin v. Finkbeiner*, 689 F.3d 584, 593 (6th Cir. 2012)).

## 1. Statute of Limitations

### a. Plaintiff's September 2016 Ethics Point Complaint is Time-Barred

Preliminarily, Defendant argues that Plaintiff's race discrimination claims are partially time-barred because Title VII "requires a party wishing to contest an allegedly discriminatory act to file a Charge with the EEOC within 300 days 'after the alleged unlawful employment practice occurred' . . .", therefore barring Plaintiff from raising Title VII discrimination claims for conduct that occurred before December 31, 2016—300 days before he filed that Charge on October 27,

2017.[6]  *Cunningham v. Washington Grp. Int'l, Inc.*, No. 08-1308, 2009 WL 2971870, at *2 (W.D.

Tenn. 2009) (quoting 42 U.S.C. § 2000e–5(e)(1)).  (ECF No.  49 at PageID 480.)  Finally,

Defendant argues that a four-year statute of limitations governs Section 1981 analyses and

therefore *any* claim brought by Plaintiff based on conduct that occurred *before* May 26, 2016 are

also time-barred.  Plaintiff disputes this assertion under the continuing-violation doctrine discussed

in *Block v. Mehary Med. College*, 723 F. App'x 273, 279 (6th Cir. 2018) (quoting *Cox v. City of*

*Memphis*, 230 F.3d 199, 202 (6th Cir. 2000).[7]

        A creature of judicial devise, the continuing-violations doctrine "presents a 'narrow

exception' to the usual requirement to bring an EEOC complaint within the limitations period."

*Id.*; *see Gandy v. Sullivan Cnty.*, 24 F.3d 861, 864 (6th Cir. 1994) ("The doctrine of continuing

violations is a judicially-created one . . .").  This Circuit recognizes two categories for continuing

---

        [6] Defendant argues that Plaintiff's September 20, 2016 internal Ethics Point complaint
should not be considered because it is time-barred; Defendant does not clarify what, if any, other
complaints or matters also preceded the December 31, 2016 statutory cutoff and should also be
excluded.  Instead, it uses the catchall language: "any alleged discrimination [Plaintiff] claims
occurred prior to" that date.  (ECF No. 49 at PageID 481.)  Therefore, to avoid speculation and
make a clean record, here the Court will address *only* whether the September 20, 2016 Ethics Point
complaint is time-barred because the Court cannot discern from the filings—nor have the Parties
specifically argued—other complaints of discrimination besides the September 20th complaint.

        [7] Plaintiff also relies on a Tennessee Supreme Court decision that provides, "a
discriminatory pay rate is actionable until it 'ceases' . . . . [I]t ceases when the employer brings the
employee into parity with his or her peers."  *Booker v. Boeing Co.*, 188 S.W.3d 639, 648 (Tenn.
2006).  However, the cause of action at issue in *Booker* arose under *state*—not, as here, *federal*—
law.  *See Booker*, 188 S.W.3d at 641 ("We accepted a question certified to this Court from the
United States District Court for the Eastern District of Tennessee to clarify the operation of the
statute of limitations for discriminatory pay claims under the Tennessee Human Rights Act.")
Plaintiff's § 1981 claims, *federal* causes of action, are controlled by the statute of limitations
authorized by Congress, which provides: "a civil action arising under an Act of Congress . . .  may
not be commenced later than 4 years after the cause of action accrues."  28 U.S. Code § 1658(a).
Therefore, the Court finds the *Booker* analysis inapposite and will assess Plaintiff's argument vis-
à-vis the continuing violation doctrine under applicable federal precedent.  *See Lucas v. Memphis
City Sch. Bd. of Educ.*, No-06-2234 B, 2007 WL 1774947, at *7 (W.D. Tenn. 2007) (finding
*Booker* "has no application" to pay discrimination claims brought under federal and not state law).

violations.  *First*, and germane here, a plaintiff may show the defendant engaged in "an ongoing, continuous series of discriminatory acts."  *Cox*, 230 F.3d at 202.  Under this theory, "the series of acts may be challenged in their entirety as long as one of those discriminatory acts falls within the limitations period," but a continuing violation may not be adduced from "continuing *effects* of past discriminatory acts."  *Id.* (emphasis added); *see Dozier v. Douglas Autotech Grp.*, No. 5:19-cv-82-TBR-LLK, 2020 WL 1102520, at *8–9 (W.D. Ky. March 2020).  "The *second* category of continuing violations arise[s] where there has occurred 'a longstanding and demonstrable policy of discrimination.'"  *Haithcock v. Frank*, 958 F.2d 671, 678 (6th Cir. 1992) (quoting *Dixon v. Anderson,* 928 F.2d 212, 217 (6th Cir. 1991)) (emphasis added).

Plaintiff alleges his September 2016 internal Ethics Point complaint chronicled an "ongoing, continuous series of discriminatory acts" such as Cummins' "refusal to align Mr. Greer's job title and compensation with the job title duties and responsibilities he was performing at the request of the Company."  (ECF No. 56 at PageID 698.)  However, this blanket statement does not rescue Plaintiff's argument—specifically, that the Court consider his September 2016 internal Ethics Point complaint—from the federal limitations clock.  *See Slorp v. Lerner, Sampson & Rothfuss*, 587 F. App'x 249, 259 (6th Cir. 2014).  Even if Plaintiff's Response establishes that Defendant failed to promote Plaintiff to a new job title and compensation rate in accordance with his employment duties, applicable precedent classifies this decision as a "discrete act."[8]  *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) (easily identifiable discrete acts include: "termination, failure to promote, denial of transfer, or refusal to hire.")  "Unlike a

---

[8] "Although an employee may allege that he suffered from a series of related discriminatory acts over the course of his employment . . . only those acts that occurred 300 days before . . . . the day that [plaintiff] filed his charge, are actionable."  *Kjhatri v. Ohio State Univ.*, No. 21-3193, 2022 U.S. App. LEXIS 2170, at *13 (6th Cir. 2022) (quoting *Morgan*, 536 U.S. at 113).

continuing violation claim, 'discrete acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges.'" *EEOC v. Kaplan Higher Ed. Grp.*, 790 F. Supp. 2d 619, 625 (N.D. Ohio 2011) (quoting *Morgan*, 536 U.S. at 113); *see Ferguson v. Snow*, 185 F. App'x 456 (6th Cir. 2006) ("Discrete acts include termination, *failure to promote*, and denial of transfer.") (emphasis added).

Here, Plaintiff *specifically* alleges that Cummins failed to promote him and wrongfully assigned his title because it did not hire him as a Customer Quality Engineer (e.g., "Cummins . . . determined that Mr. Greer's job duties most closely aligned with that of an engineer and still refused to *align him with the proper title*.")  (ECF No. 56 at PageID 695) (emphasis added).  Yet, Plaintiff fails to offer discernable "proof that the alleged acts of discrimination," specifically those enumerated in his September 2016 internal Ethics Point complaint, "occurring prior to the limitations period are sufficiently related to those occurring within the limitations period."  *Sharpe v. Cureton*, 319 F.3d 259, 267 (6th Cir. 2003) (ECF No. 56 at PageID 697–98.)  Under *Sharpe*, "discrete acts of which [the plaintiff was] immediately *aware when they occurred*," *Bell v. Ohio State Univ.*, 351 F.3d 240, 247 (6th Cir. 2003) (emphasis added), like "termination, failure to promote, denial of transfer, [and] refusal to hire," are not continuing violations.  *Morgan*, 536 U.S. at 114; *see Bowerman v. Int'l Union*, 646 F.3d 360, 366 (6th Cir. 2011); *Click v. Thompson*, 926 F. Supp. 2d 972, 973–74 (E.D. Ky. 2013).  Therefore, without more, the Court concludes that the statute of limitations bars Plaintiff's September 2016 internal Ethics Point complaint, and all allegations therein based on acts that occurred before December 31, 2016, from consideration.[9]

---

[9] Notably, "the statute of limitations does not bar Plaintiff 'from using the prior acts as *background evidence* in support of' [his] timely retaliation claim."  *Bills v. Shelby Cnty. Gov't*, No. 2:17-cv-02634-TLP-cgc, 2018 WL 3398169, at *15 (W.D. Tenn. 2018) (quoting *Morgan*, 536 U.S. at 113) (emphasis added).

*See Dundee v. Univ. Hosps. Corp*, No. 1:19-cv-01141, 2019 WL 7195317, at *17 (N.D. Ohio 2019) ("[T]he continuing violations doctrine may not be used to recover for discrete acts that occurred outside the statutory filing period . . . .")

### 2. *McDonnell Douglas* Analysis

#### a. Legal Standard

Turning to the first *McDonnell Douglas* prong, "[t]o establish a prima facie case of race discrimination, a plaintiff must produce evidence that '(1) he was a member of a protected class, (2) he suffered an adverse employment action, (3) he was otherwise qualified for the position, and (4) he was replaced by someone outside the protected class or treated differently than a similarly situated, non-protected employee.'" *Collier v. City of Memphis*, No. 21-5338, 2021 U.S. App. LEXIS 35865, at *6 (6th Cir. 2021) (quoting *Deleon v. Kalamazoo Cnty. Rd. Comm'n*, 739 F.3d 914, 918 (6th Cir. 2014)). Once a plaintiff has made this showing, the burden of production shifts to the defendant to provide a legitimate, nondiscriminatory reason for its actions. *See Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009). Once the defendant meets its burden of production, the burden shifts back to the plaintiff to establish pretext, that is, that the "employer's explanation was fabricated to conceal an illegal motive." *Id.*

The Parties only dispute elements two and four: whether Plaintiff suffered a materially adverse employment action and, specific to the wrongful termination claim, whether Defendant treated him differently than similarly situated employees outside the protected class. (ECF No. 56 at PageID 698; ECF No. 49 at PageID 482, 486.) *See Logan v. Denny's, Inc.*, 259 F.3d 558, 567 (6th Cir. 2001); *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992). Where a plaintiff fails one element, the claim cannot succeed, and courts need not explore additional elements. *See, e.g.*, *Wingo v. Mich. Bell Tel. Co.*, 815 F. App'x 43, 45 (6th Cir. 2020) (citing *Texas Dep't of*

*Comm. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)) (explaining that "a plaintiff must present enough evidence sufficient for a jury to find in the plaintiff's favor *on all elements* of the claim") (emphasis added).  Thus, the Court will begin its analysis by assessing whether Plaintiff has sufficiently shown he suffered an adverse employment action.

Courts in this Circuit have held that, "[a]n adverse employment action 'constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'  Adverse employment action 'requires an official act of the enterprise, a company act.  The decision in most cases is documented in official company records, and may be subject to review by higher level supervisors.'  In addition, it typically 'inflicts direct economic harm.'"  *Laster v. Kalamazoo*, 746 F.3d 714, 727 (6th Cir. 2014) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761–62 (1998).  Yet, a "mere inconvenience or an alteration of job responsibilities" is *not* an adverse employment action.  *White v. Burlington N. & Santa Fe Ry. Co.*, 364 F.3d 789, 795 (6th Cir. 2004) (en banc) (citing *Kocsis v. Multi-Care Mgmt. Inc.*, 97 F.3d 876, 885–87 (6th Cir. 1996)).

### b.  Failure to Promote Claim

First, the Court considers whether Plaintiff has made a prima facie showing for his failure to promote claim.  (ECF No. 31 at PageID 199; ECF No. 56 at PageID 695.)  "For the purposes of Title VII, a failure to promote is an adverse employment action."  *Nguyen v. City of Cleveland*, 229 F.3d 559, 562 (6th Cir. 2000) (citing *Hale v. Cuyahoga Cnty. Welfare Dep't*, 891 F.2d 604, 606 (6th Cir. 1989)).  Here, Plaintiff argues that Defendant's failure to promote or appoint him as an Interim Quality Leader constituted an adverse employment action because it instead promoted Tim Parrish, Valerie Clark, and Robin Guzanick, all Caucasian, to that title.  (ECF No. 31 at PageID 200; *see* ECF No. 48-2 at PageID 341–42, 346.)  Plaintiff maintains he was denied a

promotion because of his race.  (ECF No. 31 at PageID 200.)  Defendant responds that "there was no 'promotion' for [Plaintiff] to be denied . . . [because] he was referring to the position of Interim Quality Leader—a temporary, technical position for which he never applied."  (ECF No. 49 at PageID 484.)  Defendant further maintains that Plaintiff rejected a promotion offer,[10] (*Id.*), and its selection of Parrish, Clark, and Guzanick[11] as Interim Quality Leaders constituted a legitimate business decision rather than a materially adverse employment action.  (*Id.* at PageID 483–84.)

Focusing on the pleadings, affording special attention to Plaintiff's Response to the Motion, the Court finds that Plaintiff has not plead a prima facie case for failure to promote.  To begin, the Response altogether omits mention of the Interim Quality Leader position—the title Plaintiff himself specifically identified during his deposition as the basis for his failure to promote claim (*see* ECF No. 48-2 at PageID 346)—and instead focuses on the "Customer Quality Engineer Global Position Profile."  (ECF No. 56 at PageID 699.)  Consequently, the Response is *non sequitur* as to the failure to promote claim (even if it does hint at the wrongful reassignment claim, discussed *infra*).  (ECF No. 57 at PageID 707.)  Next, and critically, Plaintiff has *not disputed* Defendant's claim that the Interim Quality Leader position is a "technical, temporary position for *which he never applied for* or requested."[12]  (ECF No. 57 at PageID 712) (emphasis added).  "[T]o

---

[10] Plaintiff responds that this promotion offer was not a true promotion because it in fact reduced his pay.  (ECF No. 56 at PageID 699.)  To the extent the Parties disagree about whether the rejected offer was promotional, the Court will construe the facts in favor of the nonmoving party at the summary judgment stage.  *See Matsushita*, 475 U.S. at 587.

[11] Defendant clarified that Guzanick technically holds a different title at Cummins.  (ECF No. 57 at PageID 709–10 n. 1.)

[12] Some courts have found a prima facie case of race discrimination regarding failure to promote when it has been established that the plaintiff "applied for and was qualified for the position," but not hired; this did not occur here because Plaintiff did not apply for the Interim Quality Leader position.  *Hodges v. City of Milford*, 918 F. Supp. 2d 721, 736 (S.D. Ohio 2013); *see, e.g.*, *Nguyen*, 229 F.3d 559 at 564 (summary judgment affirmed because plaintiff did not apply for the position and therefore failed to plead his prima facie discrimination case).

make a prima facie case based upon a failure to promote, [Plaintiff] must prove that . . . he applied

for, and did not receive, a job." *Anthony v. BTR Auto. Sealing Sys.*, 339 F.3d 506, 515 (6th Cir.

2003). Therefore, the Court concludes Plaintiff has not made a prima facie case for his failure to

promote claim because he has not proven a materially adverse employment action as to that

claim,[13] a necessary element; accordingly, any such claim based on failure to promote is

**DISMISSED**.[14] *See id.*

### c. Wrongful Reassignment Claim

Second, the Court considers whether Plaintiff has made his prima facie showing for a

wrongful reassignment claim (e.g., as a Customer Quality Assurance Specialist and not Customer

Quality Engineer, or Customer Quality Engineer GPP). (ECF No. 57 at PageID 713.) The U.S.

Supreme Court noted that transfer or reassignment "is not automatically actionable" and "whether

a particular reassignment qualifies as materially adverse depends upon the circumstances of the

particular case, and 'should be judged from the perspective of a reasonable person in the plaintiff's

position' . . . ." *Burlington*, 524 U.S. at 71 (quoting *Oncale v. Sundowner Offshore Servs.*, 523

U.S. 75, 81 (1998)). Applying *Burlington*, the Sixth Circuit explained that, "[a]t a minimum, the

employee must be able to show a quantitative or qualitative change in the terms of the conditions

of employment." *Deleon*, 739 F.3d at 919. Absent a demotion or pay decrease, "an employee's

transfer may constitute a materially adverse employment action . . . so long as the *particular*

*circumstances* present give rise to some level of objective intolerability." *Id.* (emphasis added.)

---

[13] The Court need not engage in a similarly situated analysis because Plaintiff has failed to satisfy one of the four required prongs for a prima facie race discrimination case. *See, e.g.*, *Wingo*, 815 F. App'x at 45.

[14] A failure to appoint Plaintiff to a position for which he did not apply is not adverse. *Cf. Seay v. TVA*, 339 F.3d 454, 463 (6th Cir. 2003) (prima facie showing properly made in part because the "[p]laintiff applied for the position but was neither selected nor granted an interview.")

15

The Court sharply "emphasize[d] the contextual nature of these inquiries," *Threat v. City of Cleveland*, 6 F.4th 672, 679 (6th Cir. 2021), and district courts must evaluate any "indices that might be unique to a particular situation" to distinguish an adverse action that was "more disruptive than a mere inconvenience" from one better classified as a mere "alteration of job responsibilities." *Kocsis*, 97 F.3d 876 at 886; *Threat*, 6 F.4th at 679–80.

Here, Plaintiff argues that Defendant's refusal to classify him under the Customer Quality Engineer GPP "substantially reduced Mr. Greer's annual pay" and constituted a materially adverse employment action because it "inflicted direct economic harm" on Plaintiff.  (ECF No. 56 at PageID 699.)  Defendant responds that it based its decision not to assign Plaintiff to an engineer pay grade and GPP on Plaintiff's non-technical background and not his race; according to Cummins, "Plaintiff was, in fact, *not* an engineer nor doing the work of one."[15]  (ECF No. 49 at PageID 483.)  The Court finds Plaintiff has correctly argued that "[r]eassignments and position transfers can constitute adverse employment actions, particularly where they are accompanied by changes in pay." *See Redlin v. Grosse Point Pub. Sch. Sys.*, 921 F.3d 599, 607 (6th Cir. 2019).  In *Redlin*, the Sixth Circuit held that a public-school assistant principal reassigned from a high school to a middle school, thus resulting in, *inter alia*, "a lower rate of pay," made her prima facie showing of race discrimination. *Id.* at 608.  Likewise, here, taking all facts in favor of the nonmoving party, Plaintiff has satisfied the Court that he met his burden to show a prima facie case of race discrimination based on his employment reclassification.

---

[15] The Court notes that Plaintiff disputes Defendant's assertion that Plaintiff based his September 2016 EthicsPoint Complaint on race discrimination.  (ECF No. 57 at PageID 708; *see* ECF No. 47 at PageID 327.)  However, for reasons discussed *supra*, this September 2016 Complaint will not be considered because it is time-barred.  Therefore, indices in that Complaint, if any, that Defendant committed discriminatory acts based on race cannot be considered here.

But there is more.  Plaintiff's prima facie showing alone does not itself conclude the analysis; at this analytical juncture, "the burden shifts to the employer to proffer a legitimate, nondiscriminatory reason for its decision." *Upshaw*, 576 F.3d at 584.  Defendant argues that its decision to reassign Plaintiff to salaried exempt status "with a higher base pay" constituted the opposite of an adverse action because Plaintiff received an annual pay raise.  (ECF No. 49 at PageID 483.)  It also asserts that Plaintiff simply lacked the requisite qualifications for an engineer paygrade and its decision to deprive him of one was "carefully considered, legitimate, and non-discriminatory." (*Id.* at 483–84.)  Such decisions are, of course, legally permissible, under the case law Defendant cites and Plaintiff has not distinguished.  *See Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998).

Finally, the third analytical step under *McDonnell Douglas* must be assessed: Plaintiff has the burden to show pretext.  "[A] plaintiff can show pretext in three interrelated ways: (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employer's action, or (3) that they were insufficient to motivate the employer's action." *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009); *Demyanovich v. Cadon Plating & Coatings, LLC.*, 747 F.3d 419, 431 (6th Cir. 2014). "[A] plaintiff may also demonstrate pretext by offering evidence which challenges the reasonableness of the employer's decision 'to the extent that such an inquiry sheds light on whether the employer's proffered reason for the employment action was its actual motivation.'" *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 393 (6th Cir. 2008) (quoting *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 578 (6th Cir. 2003) (en banc)).  To survive summary judgment, a plaintiff "must produce sufficient evidence from which a jury could reasonably reject [the defendant's] explanation of why it" took an adverse employment action against the plaintiff. *Chen*, 580 F.3d at 400.  A plaintiff must show that the defendant's decision

17

was "so unreasonable as to be disbelieved." *Sybrandt v. Home Depot*, 560 F.3d 553, 561 (6th Cir. 2009) (finding no pretext when the employer conducted a reasonable investigation prior to terminating the plaintiff). "At the summary judgment stage, the issue is whether the plaintiff has produced evidence from which a jury could reasonably doubt the employer's explanation. If so, [his] case is sufficient to support an inference of discrimination at trial." *Id*. at 400 n.4 (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993)).

Here, Plaintiff does not dispute that Defendant's Human Resources Leader Brian Small completed an IPE[16] that indicated his appropriate salary grade "was . . . a non-engineering compensation class 1, salary grade 5 . . . consistent with similar positions across the entire company." (ECF No. 57 at PageID 710–11.) He also does not dispute that Small, at Plaintiff's request, offered Plaintiff a salary increase of "nearly twenty-five percent—from $52,873 to $66,000—to account for any potential lost overtime earnings" that he in fact accepted.[17] (ECF No. 57 at PageID 711.) Rather, Plaintiff only argues that "the failure to provide Mr. Greer with the Customer Quality Engineer[ing] [position] despite Cummin[s'] own findings is an adverse employment action"[18] and that "a jury could find this to be pretext for discrimination based on the

---

[16] *See* Small Dep. Tr., (ECF No. 55 at PageID 635), *supra* note 3.

[17] Notably, Plaintiff does not dispute that "[t]he pay range of an engineer in the corresponding salary grade, CC01/SG23, was between $64,800 and $97,200." (ECF No. 57 at PageID 712.) Accordingly, as Defendant aptly argues, Plaintiff's $66,000 salary falls within the engineer salary grade he has requested sans the title "Customer Quality Engineer". (ECF No. 49 at PageID 487.) To the extent Plaintiff disputes only his occupational title based exclusively on his "subjective impression" of how Cummins' employees perceived him (e.g., referring to him as an "engineer"), (*see* ECF No. 56 at PageID 701), his dispute is moot. *See Deleon*, 739 F.3d at 921; *Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 183 (6th Cir. 2004) ("[A] plaintiff's subjective impression concerning the desirability of one position over another generally does not control with respect to the existence of an adverse employment action.").

[18] The Response does not further discuss or cite the "findings" to which this sentence refers, nor does it address Small's deposition testimony that the IPE resulted in a higher compensation

fact that his Global Position Profile was most closely aligned with that of a Customer Quality Engineer and from internal Cummins communications that referred to Plaintiff as an engineer . . . ." (ECF No. 56 at PageID 699.)  Plaintiff disputes Defendant's characterization of him as a "non-engineering grade customer engineer" because "Plaintiff was regularly referred to as an engineer within the company based on his job duties and responsibilities."   (ECF No. 57 at PageID 710.) To corroborate his assertion, Plaintiff cites internal communications (e.g., email correspondences) wherein Cummins' personnel referred to him as an "engineer". (*See e.g.*, ECF No. 1-2 at PageID 27.)  Yet, he does not explain whether his responsibilities were "significantly different", if at all, upon reassignment. *See Laster*, 746 F.3d at 727 ("reassignment with significantly different responsibilities" can constitute a materially adverse employment action).

The Court finds that Plaintiff has failed to show pretext as to his wrongful reassignment claim for two reasons. First, Plaintiff does not argue or otherwise explain how or why the reference to his "Customer Quality Engineer GPP" *specifically correlates* with an engineer-level pay grade when he does not dispute that an employee's local job title commonly differs from the assigned GPP; second, he does not recount what *authority*, if any, the cited Cummins employees and documents—which referenced him as an "engineer"—had over his actual employment and salary classifications. (ECF No. 57 at PageID 707.)  Consequently, Plaintiff's position is incomplete: although he argues that he is entitled to an engineer's pay grade at Cummins because he has a Customer Quality Engineer GPP, he has also conceded that GPP and local title commonly differ. (*Id.*) The Court cannot discern anything in the Record or—more particularly—Plaintiff's Response, that supports a reasonable inference that a ***local title*** of Customer Quality Assurance

---

class.  It also does not refute Defendant's standard pay ranges for non-technical employees and Plaintiff even accepted this offer.  (ECF No. 57 at PageID 711.)

Specialist *corresponds with* Customer Quality Engineer *GPP* and entitles a Cummins employee to a technical (engineering) grade salary.[19]    A jury cannot evaluate this missing link, which would be necessary to conclude that Cummins' "explanation was fabricated to conceal an illegal motive." *Chen*, 580 F.3d at 400.    Thus, any dispute is immaterial.    *See Blankenship v. Superior Controls, Inc.*, 135 F. Supp. 3d 608, 615 (E.D. Mich. 2015) (quoting *Anderson*, 477 U.S. at 248) ("A dispute about a material fact is 'genuine' only if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'")    Consequently, Plaintiff cannot establish Defendant's reasons for reassigning him lacked a factual basis, did not actually motivate his reassignment, or were insufficient to motivate it.    *See Chen*, 580 F.3d at 400.    He has not shown that Cummins' decision to reassign him based on Small's IPE assessment was "so unreasonable as to be disbelieved," *Sybrandt*, 560 F.3d at 561, or "that [this] reason was false or discrimination was the real reason" for his reassignment.    *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 285 (6th Cir. 2012) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993)).    Through his refusal to challenge Defendant's stated process for his reassignment determination—e.g., the IPE and JCQ processes—Plaintiff has not provided the Court with any reason to believe that Defendant did not make "a reasonably informed and considered decision before taking an adverse employment action." *Smith*, 155 F.3d at 807.    Therefore, even if Plaintiff could show that he deserved the Customer Quality Engineer GPP, he *cannot*—without the missing correlative links and facts to establish that

---

[19] Defendant contends that "the Customer Quality Engineer GPP . . . is not an "engineering position" under the technical sense of that term; it is a nontechnical position." (ECF No. 62 at PageID 732 n. 1.)    Though all facts must be construed in favor of the nonmovant, Plaintiff still has the low burden "to rebut, but not to disprove, the defendant's proffered rationale." *Griffin*, 689 F.3d at 593.    Here, Plaintiff presented no specific facts, evidence, or law in his Response to rebut Defendant's proffered rationale or suggest a correlation between the engineer GPP and local title that supports a reasonable inference that he qualified for an engineer title and salary.    Therefore, his arguments *cannot* defeat summary judgment.    *See Moldowan*, 578 F.3d at 374 (On summary judgment, a plaintiff "must set forth specific facts showing that there is a genuine issue for trial.")

20

discrimination caused the reassignment—establish his eligibility for an engineer's paygrade; accordingly, the wrongful reassignment claim is **DISMISSED**. *Id.*

## B. Retaliation Claims

Plaintiff alleges that Defendant retaliatorily: (1) failed to promote, (2) wrongfully reassigned, and (3) terminated him because he made "complaints of discrimination" and the ultimate decision to file this lawsuit.[20]  (ECF No. 31 at PageID 200; ECF No. 56 at PageID 700–03.)  Defendant responds that: (1) it "carefully evaluated" Plaintiff's position and pay and (2) Plaintiff "cannot use reclassification as evidence of retaliation because Greer never actually engaged in protected activity. . . ."[21]  (ECF No. 56 at PageID 734.)  Next, Defendant asserts that (3) it terminated Plaintiff—based on "predetermined criteria" and five months after he filed his *pro se* Complaint that initiated this litigation—as part of a legitimate reduction in force.[22]  (*Id.* at PageID 735.)  The Parties' positions will be developed further in this section's analytical paragraphs.

In much the same way as the analysis for Plaintiff's race discrimination claims proceeded, a similar framework applies here.[23]  As the Sixth Circuit has explained: "To make a prima facie case of retaliation, 'a plaintiff must establish that: (1) he engaged in activity protected by Title VII; (2) the exercise of his civil rights was known to the defendant; (3) thereafter, the defendant took

---

[20] Specifically, "Plaintiff remains firm [in] the position that this justification was a mere pretext for retaliation."  (ECF No. 56 at PageID 701.)

[21] Construing facts in favor of the non-movant, the Court finds, for purposes of this analysis, that Plaintiff engaged in protected activity when he filed his 2017 EEOC Complaint.

[22] To remind the reader, Plaintiff filed his *pro se* Complaint on August 12, 2019.  (ECF No. 1.)  Defendant terminated Plaintiff on January 8, 2020.  (ECF No. 56 at PageID 701.)

[23] "The elements of a retaliation claim under § 1981 are the same as those under Title VII." *Boxill v. O'Grady*, 935 F.3d 510, 520 (6th Cir. 2019).  Therefore, the Court will treat Plaintiffs claims under both authorities to the same analysis and they will be addressed together.

an employment action adverse to the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action.'" *Block*, 723 F. App'x at 283 (quoting *Nguyen*, 229 F.3d at 563); *see Singleton v. PSA Airlines, Inc.*, No. 21-3423, 2022 U.S. App. LEXIS 7777, at *9 (6th Cir. 2022). "To establish the causal connection required in the fourth prong, a plaintiff must produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken had the plaintiff not filed a discrimination action." *Sharp v. Aker Plant Servs. Grp.*, 600 F. App'x 337, 340 (6th Cir. 2015) (quoting *Nguyen*, 229 F.3d at 563). "[E]vidence that defendant treated the plaintiff differently from similarly situated employees or that the adverse action was taken shortly after the plaintiff's exercise of protected rights is relevant to causation." *Id.* at 563 (citing *Moon v. Transport Drivers, Inc.*, 836 F.2d 226, 230 (6th Cir. 1987)).

Should a Plaintiff establish these requirements, "'the burden of production of evidence shifts to the employer to articulate some legitimate, non-discriminatory reason for its actions.'" *Laster*, 746 F.3d at 730 (quoting *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007)). "If the employer does so, then 'the burden shifts back to Plaintiff to demonstrate that Defendants' proffered reason was not the true reason for the employment decision." *Block*, 723 F. App'x at 283 (quoting *Gonzales*, 481 F.3d at 333) (internal citations omitted); *Ladd v. Grand Trunk W. R.R., Inc.*, 552 F.3d 495, 502 (6th Cir. 2009).

### 1.  Retaliation Analysis

#### a.  Failure to Promote

First, Plaintiff's decision to file an EEOC Complaint qualifies as Title VII "protected activity" and therefore satisfies the initial analytical step. *Imwalle v. Reliance Med. Prods.*, 515 F.3d 531, 550 (6th Cir. 2008). Second, Defendant knew that Plaintiff filed his EEOC Complaint

based on the EEOC's right to sue notice.[24]  (ECF No. 1-9 at PageID 81.)  Third, for reasons outlined

in the previous section, Plaintiff did not suffer an adverse employment action because Defendant

did not promote him; this matter has been discussed and the same analysis applies here.[25]

However, assuming nonetheless that Plaintiff did suffer an adverse employment action in

the retaliation context, his claim fails under the fourth and final analytical prong announced by the

Sixth Circuit in *Nguyen*.  More specifically, Plaintiff must show that "there was a causal connection

between the protected activity and the adverse employment action." *Nguyen*, 229 F.3d at 563.  His

claim fails in this respect for three reasons.  *Initially*, although Plaintiff alleges that "Cummins[]

dragged its feet for several months before completing its investigation into Mr. Greer's

complaints" about race discrimination at his workplace, this argument relies on the September

2016 internal Complaint that has been time-barred.  (ECF No. 56 at PageID 701.)  For reasons

previously discussed at length in this Order, the Court will not consider the substance of that

complaint or this argument.  *Next*, Plaintiff argues that "Cummin[s'] own objective evaluation of

---

[24] This direct evidence sufficiently establishes that Defendant knew about the protected activity here. "But direct evidence of such knowledge or awareness is not required, and . . . a plaintiff may survive summary judgment by producing circumstantial evidence to establish this element of her claim." *Mulhall v. Ashcroft*, 287 F.3d 543, 552 (6th Cir. 2002).  Indeed, Defendant even admits that, "Cummins was aware of Plaintiff's complaints and intention to bring a lawsuit for years prior to the January 2020 reduction in force."  (ECF No. 49 at PageID 492.)

[25] The Court "*cannot* simply hold that [Greer's] failure to provide evidence of an essential element of [his] prima facie case is dispositive here." *Tisdale v. Fed. Express Corp.*, 415 F.3d 516, 529 (6th Cir. 2005).  By no means does the Court consider as dispositive Plaintiff's failure to establish an adverse employment action at the prima facie stage; it only notes the relevance of this analysis here. *See Imwalle*, 515 F.3d at 546 ("This is not to say . . . that a plaintiff's failure to present evidence sufficient to make out a prima facie case is irrelevant . . . .") (emphasis added); *see also Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000) (courts may review "all of the evidence in the record," including the evidence submitted for a plaintiff's prima facie case); *see Matsushita*, 475 U.S. at 587 (courts must review the record "taken as a whole" and draw inferences in favor of the nonmovant).  Indeed, and precisely *because* evidence—or lack thereof— at the prima facie stage is *not* dispositive as to the retaliation claim, the Court proceeds to conduct its causal connection analysis.

23

Mr. Greer's job responsibilities and duties concluded that his job most closely aligned with that of an engineer."[26]  (ECF No. 56 at PageID 701.)  As discussed before, and germane here, just because Cummins' personnel referred to Plaintiff as an "engineer" does not necessarily render him one— particularly when Plaintiff has not disputed that an employee with a *non-technical local title* may *simultaneously* hold an *engineering GPP* at Cummins.  (ECF No. 57 at PageID 707.)  *Finally*, Plaintiff asserts that, "[g]iven the temporal proximity between the complaints and the adverse employment action, coupled with other evidence of retaliatory conduct, there is sufficient evidence of the final element, the causal connection."  (ECF No. 57 at PageID 702.)  However, Plaintiff cites no case law or facts in the record to corroborate this conclusory assertion.  And, as with *pro se* plaintiffs, let alone counseled ones, "courts have no duty to guess at the nature of the argument or scour the record for supporting evidence" in the Title VII retaliation claims context.[27]  *Hobson v. Austin*, Case No. 21-5308, 2022 U.S. App. LEXIS 476, at *14 (6th Cir. 2022); *Arendale v. City of Memphis*, 519 F.3d 587, 601 (6th Cir. 2008) ("[C]onclusory statements are not sufficient to survive any motion for summary judgment.").  Therefore, without more, Plaintiffs' claim that Defendant's failure to promote him to an engineering title constituted retaliation is **DISMISSED** for lack of causal connection that proves fatal to his ability to plead a prima facie case.

### b.  Wrongful Reassignment

---

[26]  That Plaintiff concedes Defendant conducted an "objective" evaluation severely undermines his argument that Defendant based its decision not to promote him on race.  Indeed, the race-motivated denial of promotion that Plaintiff alleges occurred would most likely result from an evaluation laced with prejudice, *not* one approached with objectivity.

[27]  To the extent Plaintiff argues that the temporal proximity between the complaints and Defendant's failure to promote him warrants a causal connection, he has failed to provide a scintilla of authority to corroborate his claim.  Although Plaintiff's burden to make a prima facie showing is "not onerous", indeed it is even "a burden easily met," nevertheless it does exist.  *See Griffin*, 689 F.3d at 593 (plaintiff has a burden to "rebut, but not to disprove, the defendant's proffered rationale); *Nguyen*, 229 F.3d at 565–66; *Wingo v. Mich. Bell Tel. Co.*, 815 F. App'x at 45.

Second, as with the failure to promote claim, the first two analytical steps have been met because Plaintiff filed his EEOC Complaint, a protected activity, and Defendant knew that he did. The third step—whether Plaintiff's *reassignment* at Cummins constituted an "adverse employment action"—also has not been established for the same two reasons the Court provided in the previous section for why Plaintiff failed to show that Defendant pretextually decided to reassign him based on his race.[28]

But, just as with his failure to promote retaliation claim, even if Plaintiff could establish that his reassignment constituted an adverse employment action, his claim still fails under the fourth *Nguyen* prong, namely whether "there was a *causal connection* between the protected activity and the adverse employment action." *Imwalle*, 515 F.3d at 544 (citing *EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 860 (6th Cir. 1997)) (emphasis added). To this end, Plaintiff "must produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken had the plaintiff not filed a discrimination action." *Nguyen*, 229 F.3d at 563.

Here, Plaintiff argues in his Declaration that "Cummins offered [him] a job position that substantially reduced [his] overall compensation because [he] continued to complain[] about being discriminated against." (ECF No. 57 at PageID 722.) However, he does not dispute that Brian Small, Cummins' Human Resources Director, "offered Plaintiff an additional salary increase— this time to nearly twenty-five percent—from $52,873.60 to $66,000, to account for any potential lost overtime earnings." (ECF No. 57 at PageID 711.) Further, Plaintiff does not dispute that Small reevaluated Plaintiff's new salary "*at Plaintiff's request*" and that Plaintiff then *accepted* Small's job offer "of Customer Quality Assurance Specialist with a GPP of Customer Quality Engineer and a non-engineering pay grade of CC01/P05." (*Id.*) The Court cannot discern, nor has

---

[28] *See* discussion, *supra* note 21.

Plaintiff explained, why an employment reassignment based on an assessment *requested* by the employee—that was later *accepted* by him—constitutes a materially *adverse* employment action. Taking all facts in favor of the nonmovant, Plaintiff has not provided any evidence that a reasonable juror could use to question: (a) the integrity of Small's assessment,[29] (b) the process he used to conclude that Plaintiff should be assigned the local title of Customer Quality Assurance Specialist with a non-engineering pay grade, (3) that he did not voluntarily accept the offer, or (4) whether his supervisors exhibited racial animus toward him. (*See* ECF No. 57 at 714.)  Indeed, perhaps perplexingly in the context of what has been alleged in this lawsuit, Plaintiff *accepted* Small's offer when he could have rejected it (as he had done on three previous occasions). Therefore, since Plaintiff has not produced sufficient evidence to support a reasonable inference that his reassignment occurred *because* he filed an EEOC Complaint, his retaliation claim based on wrongful reassignment is **DISMISSED** for lack of a causal connection that proves fatal to his ability to plead a prima facie case.[30]

### c. Wrongful Termination

---

[29] Plaintiff does mention that although Cummins' Human Resources managers usually took notes when they investigate ethics complaints, Small did not take any such notes here. (ECF No. 57 at PageID 717.)  However, Small explained that whether he takes notes during an investigation "depends on the scenario" and notes are generally taken once he has "validation that there's an ethics violation or a concern of an ethics violation." (*Id.*)  Small distinguished Plaintiff's complaint as one based on *compensation* and therefore distinct from an ethics violation complaint where notetaking was a more standard practice.  (*Id.*)  Plaintiff does not develop this argument further and nothing in the record suggests this lack of notetaking was determinative.

[30] Although Plaintiff, according to his Declaration, (ECF No. 57 at PageID 722–23), does believe his reassignment and subsequent terminated occurred "in retaliation for filing a charge of discrimination with the EEOC and filing the instant lawsuit," his *ipse dixit* alone does not immunize his case against summary judgment.  *See Mitchell v. Toledo Hosp.*, 964 F.2d 577, 585 (6th Cir. 1992) ("subjective beliefs . . . are wholly insufficient evidence to establish a claim of discrimination as a matter of law").  Defendant cites *Mitchell* for this proposition in its Motion, and Plaintiff did not distinguish it; thus, the Court finds no reason why it does not apply here.

Third, and finally, the Court considers whether Plaintiff has made a prima facie showing for his retaliation claim based on wrongful termination.  (ECF No. 31 at PageID 201.)  "To establish a prima facie claim of Title VII retaliation, [a plaintiff] must show: (1) that he engaged in a protected activity, (2) his exercise of such protected activity was known by [the defendant], (3) thereafter, [the defendant] took an action that was materially adverse to him, and (4) a causal connection existed between the protected activity and the materially adverse action."  *Wingo*, 815 F. App'x at 46.  Here, Plaintiff engaged in a protected activity (filing his EEOC Complaint and this lawsuit) that Defendant knew about, (ECF No. 1-9 at PageID 81), and he suffered an adverse employment action (termination).  Thus, the Court must *only* decide whether Plaintiff has presented sufficient evidence that supports a reasonable inference for a causal connection between his January 2020 termination and the EEOC Complaint that he filed on October 27, 2017 and, if so, whether Defendant's reason(s) were legitimate or based on pretext rooted in discrimination.

Plaintiff makes three arguments to support his allegation that "Defendant's ultimate act of retaliation . . . was terminating him."  (ECF No. 56 at PageID 701.)  First, that Alvin Richardson, the decisionmaker, "knew about Mr. Greer's protected activity" and, second, that Richardson "based Mr. Greer's selection for termination . . . on performance issues that are not documented anywhere in Mr. Greer's personnel file and had no independent substantiation."  (*Id.*)  Third, he alleges that "the temporal proximity between the complaints and the adverse employment action . . . is sufficient evidence of the final element, the causal connection."[31]  (*Id.*)  Defendant responds that Richardson[32] decided to terminate Plaintiff, as one among several employees he laid off due

---

[31] Plaintiff does not cite case law or to the Record, notwithstanding his own Declaration, to support any of these arguments.  (ECF No. 56 at PageID 701–02.)

[32] Defendant notes that, like Plaintiff, Richardson is an African American employee.

to Cummins' reduction in force,[33] based on: (1) a set of predetermined criteria and (2) the two years between the October 2017 EEOC Complaint and January 2020 termination being "too attenuated a connection to suggest [Plaintiff's termination] was somehow retaliatory." (ECF No. 62 at PageID 735.)

Turning to Plaintiff's first argument, even accepting as true that Richardson knew about Plaintiff's EEOC Complaint at the time he authorized the termination does not necessarily mean that he terminated Plaintiff *because* he filed that Complaint. After all, any allegation that requires the Court to infer—without more specificity from Plaintiff—that Richardson terminated Plaintiff in retaliation for his EEOC Complaint simply because he knew about it is too "vague and generalized" to establish a causal connection. *See Allen v. Michigan Dep't of Corrections*, 165 F.3d 405, 413 (6th Cir. 1999) ("conclusory allegations are insufficient to establish causation"). But the Court need not guess the reason why Richardson authorized Greer's termination because Plaintiff does not dispute that Richardson based his decision on predetermined criteria.[34] (ECF No. 57 at PageID 715.) Plaintiff altogether fails to discuss, let alone *rebut*, these criteria or their application to his termination in his Response. *See DiCarlo*, 358 F.3d at 414–15 (even on summary judgment, plaintiff retains the burden to "persuade the trier of fact that the defendant intentionally discriminated against the plaintiff.") Therefore, Plaintiff's first argument cannot establish a causal connection between the EEOC Complaint and the January 2020 termination and the Court is

---

[33] The Parties do not dispute that the racial demographics for employees terminated in January 2020 from the RMP included two Caucasians, three African Americans (including Plaintiff), and one Hispanic individual. (ECF No. 57 at PageID 715–16.)

[34] "The criteria included the employee's performance rating, criticality of skill set or experience to business, skill or technical knowledge level, teamwork, right environment scores and the needs of the employee's department." (ECF No. 57 at PageID 715.)

convinced that Defendant's reliance on its unchallenged predetermined criteria was legitimate. *See Upshaw*, 576 F.3d at 584.

Next, Plaintiff argues that Richardson terminated him based on undocumented "performance issues" that lacked "independent substantiation". (ECF No. 56 at PageID 701.) However, Plaintiff does not cite any basis for this conclusion; specifically, he does not identify the issues to which he refers, discuss why they require "independent substantiation", or define that term. Nonetheless, a close inspection of Richardson's deposition transcript reveals the line of questioning where this issue arises. (ECF No. 54 at PageID 533.) Richardson explained that he did not document Plaintiff's performance issues in part because "it was information that [was] told to [him] previously by [Plaintiff's] direct manager" and Cummins typically addresses such issues through Human Resources, meaning Richardson "did not have that information." (*Id.*) Richardson explained that he terminated Plaintiff "based off the information [he] got from the manager . . . ." (*Id.*) According to this testimony, filed by Plaintiff, Richardson could not document information about Plaintiff's performance issues that he did not have but was instead overseen by Plaintiff's direct manager. It is unclear from the pleadings and the dearth of legal authority in this portion of Plaintiff's Response why Richardson's deferential reliance on the manager's information about Greer's performance issues constituted an inappropriate basis for termination.[35] Therefore, without more, Plaintiff's second argument also does not create a reasonable inference for a causal connection between the EEOC Complaint and the January 2020 termination and does not show Cummins' predetermined criteria for reduction-in-force terminations were pretextual.

---

[35] Plaintiff does not argue that anything about this process differed from standard practice at Cummins. If he had, perhaps the argument would have been stronger, however no such argument has been made here and the Court takes no position on a speculative claim.

Lastly, operative precedent in the Sixth Circuit forecloses Plaintiff's temporal proximity argument. Defendant cites two cases in its Motion for the proposition that a causal connection exists only when the adverse employment action at issue occurred within a matter of months after the plaintiff engaged in protected activity. *See Hafford v. Seidner*, 183 F.3d 506, 515 (6th Cir. 1999); *Gambill v. Duke Energy Corp.*, 456 F. App'x 578, 588–89 (6th Cir. 2012). Plaintiff does not attempt to distinguish or rebut these cases in his Response, offering instead only his *ipse dixit*— a decision fatal to his argument. Here, over *two years* passed between the time Plaintiff filed his EEOC Complaint (October 27, 2017) and his termination (January 8, 2020). The Sixth Circuit has found far shorter time periods insufficient to show temporal proximity in similar cases. *See Hafford*, 183 F.3d at 515 ("Absent additional evidence, this loose temporal proximity" of "disciplinary actions occur[ing] two to five months after Hafford filed charges" is "insufficient to create a triable issue."); *Cooper v. City of N. Olmstead*, 795 F.2d 1265, 1272 (6th Cir. 1986) ("The mere fact that Cooper was discharged four months after filing a discrimination claim is insufficient to support an [inference] of retaliation."). Therefore, Plaintiff's third attempt to create a reasonable inference for causal connection fails as a matter of law, and his retaliation claims are **DISMISSED**.[36]

## CONCLUSION

For the foregoing reasons, Defendant's Motion is hereby **GRANTED**. All claims against Defendant are **DISMISSED WITH PREJUDICE**.

---

[36] It is worth noting that even if Plaintiff could establish temporal proximity, his claims would still fall short of the prima facie case and pretext required to survive summary judgment. "Proximity in time can raise a prima facie case of retaliatory discharge . . . . But *proximity alone may not survive summary judgment* . . . nor does it necessarily imply causation." *Chandler v. Specialty Tires of Am. (Tenn.)*, 283 F.3d 818, 826 (6th Cir. 2002) (emphasis added); *see Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 314 (6th Cir. 2001).

**IT IS SO ORDERED** this 1st day of July, 2022.

*s/ Mark Norris*
MARK S. NORRIS
UNITED STATES DISTRICT JUDGE